# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

|  |  |  |
|---|---|---|
| | * | |
| Audra Lynn Gale, | * | Case No. 2:12CV00677BSJ |
| Plaintiff | * | |
| | * | Order |
| vs. | * | |
| | * | Senior Judge Bruce S. Jenkins |
| Carolyn W. Colvin, | * | |
| Acting Commissioner of Social Security, | * | |
| Defendant | * | |
| | * | |

Plaintiff brought this action for judicial review of the final decision of the Commissioner

of the Social Security Administration, which denied Plaintiff's claim for disability insurance

benefits. The matter was heard on March 22, 2013, John Borsos appearing for Plaintiff and Dan

Burrows appearing for Defendant. The Court has considered the record, the briefs of the parties,

and the arguments of counsel.

The Court finds that Defendant's decision was free from legal error and supported by

substantial evidence. Therefore, Defendant's decision is AFFIRMED. The Court's reasoning

follows.

## BACKGROUND

Plaintiff applied for disability insurance benefits under Title II of the Social Security Act,

42 U.S.C. §§ 401–34 (2006 & Supp. IV 2011), in May 2009, claiming that she was unable to

perform any substantial gainful activity due to limitations stemming from degenerative joint

disease of the left knee (which had resulted in knee replacement surgery), degenerative disc

disease of the lumbar spine, and depression. After going through the various levels of the

administrative appeals process, Plaintiff's claim was ultimately and finally denied by the Social

Security Administration. In its final decision, the agency found that, despite her impairments,

Plaintiff retained the residual functional capacity (RFC)[1] to perform light work[2] with various

physical and mental limitations, including a limitation "to only occasional interaction with the

public." The agency then identified three jobs that Plaintiff could still perform with this RFC and

therefore determined that she was not disabled.[3] Thereafter, Plaintiff filed this action under

Social Security Act § 205(g), 42 U.S.C. § 405(g), requesting that the Court overturn the agency's

decision and award her benefits or, alternately, send the case back for further administrative

proceedings.

## ANALYSIS

To qualify for disability, a claimant has the burden to prove she is unable "to engage in

any substantial gainful activity by reason of any medically determinable physical or mental

impairment which [could] be expected to result in death or which [had] lasted or [could] be

expected to last for a continuous period of not less than" one year. Social Security Act § 223(d),

42 U.S.C. § 423(d) (2006); *accord Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997)

(citation omitted). A court's review of the Social Security Administration's final decision on a

---

[1] RFC is "the most [a claimant] can do despite [her] limitations." 20 C.F.R. § 404.1545(a) (2012).

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b) (2012).

[3] If a claimant can still perform her "past relevant work" or "can make an adjustment to other work," she is not disabled. 20 C.F.R. § 404.1520(a)(4) (2012).

disability claim is deferential: the court is limited to considering whether the decision is

supported by substantial evidence in the record as a whole and whether the agency applied the

correct legal standards in deciding the claim. *See, e.g.*, *Lax v. Astrue*, 489 F.3d 1080, 1084

(10th Cir. 2007). The Court may not re-weigh the evidence or substitute its judgment for the

agency's. *Id.* Rather, the agency's factual determinations are conclusive so long as "supported by

substantial evidence." § 205(g). Substantial evidence is less than a preponderance but more than

a scintilla, *Lax*, 489 F3d at 1084 (citing *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004));

it is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion," *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (citations omitted). Where

the evidence can support either the agency's decision or an award of benefits, the court must

affirm the agency's decision. *See, e.g.*, *Lax*, 489 F.3d at 1084 (quoting *Zoltanski*, 372 F.3d at

1200); *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990) (citation omitted).

The agency's final decision in this case is embodied in a written decision by an

administrative law judge (ALJ), dated April 28, 2011. Agency regulations set forth a five-step,

sequential evaluation process for determining whether a disability claimant meets the Act's

definition of "disability,"[4] and the ALJ's decision followed this process here. Plaintiff, however,

---

[4] In conducting the five-step process, an adjudicator considers the following: (1) whether the claimant engaged in substantial gainful activity during the alleged period of disability, if not (2) whether the claimant had a severe impairment, if so (3) whether the claimant had a condition that met or medically equaled the criteria of one of the impairments the agency has found to be per se disabling, *see generally* 20 C.F.R. pt. 404, subpart P, app. 1 (listing such impairments and their criteria), if not, (4) whether the claimant could return to her past relevant work, and, if not, (5) whether the claimant could perform other work in the national economy.  20 C.F.R. § 404.1520(a)(4) (2012). If the answer to (1), (4), or (5) is yes or if the answer to (2) is no, the

asserts that the agency's decision is defective in several respects. She claims that the ALJ's

decision is not supported by substantial evidence because (1) the ALJ's finding that Plaintiff and

her parents were not entirely credible as to the extent and severity of Plaintiff's impairments did

not have sufficient support in the record; (2) the ALJ failed to adequately address the opinions of

her treating psychologist, Alana Jacobs, Ph.D.; (3) the ALJ claimed to give great weight to the

opinions of Patricia Truhn, Ph.D., but actually ignored several of the limitations found in

Dr. Truhn's opinion; and (4) the ALJ failed to identify jobs that exist in significant numbers that

Plaintiff could still perform despite her limitations. Plaintiff also challenges the administrative

proceedings in this case, arguing that the ALJ prevented her from adequately cross-examining an

expert witness who testified at her hearing, which denied her due process of law. None of these

arguments, however, provide adequate grounds for overturning the agency's decision in this case.

## I.        The ALJ's Credibility Determinations

The deferential standard of review in Social Security cases largely defeats Plaintiff's

arguments regarding the ALJ's credibility determinations. *Accord Gossett v. Bowen*, 862 F.2d

802, 807 (10th Cir. 1988) ("[W]e generally treat credibility determinations made by an ALJ as

binding upon review.") (citation omitted). Plaintiff and her parents claimed that Plaintiff's

functioning was extremely limited by her physical and mental impairments and that she could

barely leave the house or have any significant interaction with other people. However, the ALJ

gave several reasons, supported by appropriate references to the record, for doubting that Plaintiff

---

inquiry stops and the claimant is not considered disabled. *See id.* If the answer to (3) is yes or (5)
is no, the inquiry stops and the claimant is deemed disabled. *See id.*

was limited to the extent she and her parents claimed. The ALJ noted that Plaintiff's recorded

activities were inconsistent with the limitations she was alleging: despite claiming that her

anxiety prevented her from having any significant interaction with other people, she had been

able to shop at Wal-Mart; attend a collegiate sporting event; interact regularly with friends on

Facebook; and even meet a boyfriend on eHarmony, who had visited her. The ALJ also noted

that Plaintiff had a history of drug abuse, which could be leading her to exaggerate her physical

pain in an effort to obtain more pills. And the ALJ agreed with Dr. Jacobs' opinion that benefits

of the relatively responsibility-free life Plaintiff was living motivated her to exaggerate her

condition and claim she could not work: she was living with her parents, who were generally

taking care of her needs and allowed her to work for their business only when she felt like it.

These reasons were sufficient to support the ALJ's decision. *See Poppa v. Astrue,* 569 F.3d 1167,

1171-72 (10th Cir. 2009) (finding the ALJ properly discussed and relied on evidence of drug-

seeking behavior when assessing the claimant's credibility); *Musgrave v. Sullivan*, 966 F.2d

1371, 1376 (10th Cir. 1992) (examining doctor observed that the claimant seemed to be seeking

some type of economic means to take care of himself without having to work); *Potter v. Sec'y of

Health & Human Servs.*, 905 F.2d 1346, 1349 (10th Cir. 1990) (noting the claimant's assertions

regarding her limitations were contradicted by evidence of her activities); 20 C.F.R.

§ 404.1529(c)(3) (2012) (ALJ must consider, inter alia, claimant's activities and other factors

that may bear on credibility).

     In arguing against the ALJ's findings, Plaintiff points to various pieces of evidence that

she says support the alleged extent of her limitations. But, even if this evidence shows what

Plaintiff claims it does, it is inadequate to support overturning the agency's decision at this stage. The question for this Court is not whether the ALJ's decision was the best interpretation of the record. Rather, the question is whether the ALJ's decision was a reasonable interpretation of the record, regardless of other, equally reasonable (or even more reasonable) findings that could have been made. Given that Plaintiff's activities showed she was capable of at least some social activity and that her own treating psychologist had found her to be exaggerating her symptoms, it was reasonable for the ALJ to determine that Plaintiff was not entirely credible as to the limiting effects of her condition.

## II.     Dr. Jacobs' Opinions

With regard to Dr. Jacobs, the decision reflects that the ALJ adequately considered and discussed Dr. Jacobs' treatment of Plaintiff and opinions regarding Plaintiff's functioning. Social Security regulations require an ALJ to "consider the medical opinions in [a claimant's] case record" and to "give good reasons . . . for the weight" given to the opinions of a treating doctor like Dr. Jacobs. 20 C.F.R. § 404.1527 (2012).

Plaintiff asserts that there are several different opinions from Dr. Jacobs that the ALJ did not consider. However, much of what Plaintiff points to are not "medical opinions" under any ordinary understanding of that phrase. Rather, they are simply recordings of Plaintiff's reported symptoms. "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect *judgments* about the nature and severity of [a claimant's] impairments . . . ." *Id.* (emphasis added). The very essence of a medical opinion is that the doctor is applying her expertise to the evidence before her and coming to some sort of conclusion.

Where a doctor is merely a stenographer for the claimant's reported symptoms, she has not exercised any sort of judgment and her notes are therefore not medical opinions. *See generally* § 223(d) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . ."). Simple statements that a claimant is unemployable are likewise not true medical opinions, as they are statements about an issue reserved to the agency, § 404.1527, and do not involve any *medical* judgment. *See Cowan*, 552 F.3d at 1189.

Also, some of the evidence Plaintiff identifies is from before her alleged onset date. That evidence is therefore of limited, if any, relevance, even if it does reflect a true medical opinion.[5]

What is left of Plaintiff's list once the pre-onset and non-opinion evidence is weeded out is (1) GAF scores, (2) a statement that Plaintiff did not "realize[] the extent and degree [her anxiety] negatively impacts her life."

With regard to the GAF scores, Plaintiff is wrong that this was not addressed by the ALJ. On the contrary, the ALJ explicitly addressed Plaintiff's low GAF scores, interpreting them to be reflective of Plaintiff's difficulties with social interaction (since examination had shown Plaintiff's mental/intellectual functioning to be normal). And the ALJ adequately and reasonably incorporating the score into her findings by limiting Plaintiff to only occasional interaction with the public.

---

[5] This is especially true with regard to the September 24, 2007, global assessment of functioning (GAF) score Plaintiff identifies. A GAF score records a "clinician's judgment of the individual's overall level of functioning," but it is a snapshot of a condition at one point in time—a temporal diagnosis rather than a lasting one. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text revision 2000). Therefore, Plaintiff cannot argue that a pre-alleged-onset GAF score reflected her post-alleged-onset condition.

With regard to the statement regarding Plaintiff's understanding of the impact of her anxiety, it is not clear how this helps Plaintiff. It only seems to support the ALJ's decision to find Plaintiff not entirely credible and therefore rely primarily on other evidence to come to a conclusion regarding Plaintiff's RFC. Thus, even assuming this is a medical opinion that the ALJ was obligated to address (an issue on which this Court makes no final ruling), it was harmless for the ALJ not to address it as it only supported her conclusions. *See generally Palmer v. Hoffman*, 318 U.S. 109, 116 (1943) ("He who seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted.").

Therefore, Plaintiff has presented no grounds based on Dr. Jacobs' opinion that would justify disturbing the agency's decision.

## III.    Dr. Truhn's Opinions

Likewise, the ALJ adequately addressed Dr. Truhn's opinions. Plaintiff argues that although the ALJ claimed to give great weight to Dr. Truhn's opinions, she in fact ignored substantial portions of the opinion. Plaintiff bases her argument on a Mental RFC Assessment form on which Dr. Truhn expressed that Plaintiff had moderate limitations in various areas of mental functioning.

Plaintiff's argument stems from a misunderstanding regarding the purpose, use, and meaning of this form. As the Tenth Circuit recently explained in *Sullivan v. Colvin*, No. 12-5147, 2013 U.S. App. LEXIS 5153, at *8–9 (10th Cir. Mar. 13, 2013), the Mental RFC form has several sections. Section I, where Dr. Truhn expressed her opinion regarding moderate limitations, "'is merely a worksheet to aid in deciding the presence and degree of functional

limitations and the adequacy of documentation and does not constitute the RFC assessment.'" *Id.*

at \*9 (quoting Soc. Sec. Admin., *Program Operations Manual System* (*POMS*) § DI 24510.060).

"'It is in [Section III] that the actual mental RFC assessment is recorded, explaining the

conclusions indicated in [S]ection I, in terms of the extent to which these mental capacities or

functions could or could not be performed in work settings.'" *Id.* (quoting *POMS* § di 24510.060)

(alterations in original). In short, the opinions in Section III are a distillation of the summary

opinions in Section I.

Here, the ALJ's RFC finding tracks Dr. Truhn's Section III opinion that Plaintiff could

perform at least simple work with limited public contact. Therefore, Dr. Truhn's Section I

opinions, which were accounted for in her Section III opinion are also accounted for in the ALJ's

RFC finding. There was no error.

## IV.     Significant Numbers of Jobs

Plaintiff's argument regarding significant numbers of jobs is likewise without merit. The

ALJ found Plaintiff still capable of performing three specific jobs: produce weigher, with 60,000

jobs available nationally; silver wrapper, with 100,000 jobs nationally; and sock ironer, with

40,000 jobs nationally. Plaintiff focuses on the state-level numbers for these jobs, all of which

come in at 400 available jobs or less. However, the law is very clear that it is the national

numbers that matter, not the state ones. *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir.

2009); *accord* § 223(d); 20 C.F.R. § 404.1566(c) (2012). And although there is no bright line at

which the number of jobs becomes significant, the Court is comfortable that 200,000 total jobs in

the national economy is a significant number. *See Botello v. Astrue*, 376 F. App'x 847, 851 (10th

Cir. 2010) (finding 67,250 jobs to be a significant number).

**V.    Due Process**

Plaintiff claims that the ALJ prevented her from adequately cross-examining an expert

witness who testified at her hearing, which denied her due process of law. The Court has

examined the record and is satisfied that Plaintiff was not prevented from asking any questions of

the vocational expert or otherwise denied due process of law.[6]

<b><u>CONCLUSION</u></b>

Having determined that the agency's decision is supported by substantial evidence and

free from harmful legal error, that decision is AFFIRMED. Judgment shall be entered in

Defendant's favor in accordance with Fed. R. Civ. P. 58.

Dated this _____ day of _____, 20____.

                                        _____
                                        Bruce J. Jenkins
                                        Senior United States District Judge

---

[6] Plaintiff's attorney was asking the vocational expert questions regarding Section I of the Mental RFC form from Dr. Truhn. The ALJ simply tried to explain to the attorney precisely what the Court has reaffirmed here: that Section I is not an RFC finding. And, after doing that, the ALJ allowed the attorney to ask those questions anyway.

Cir. 2010) (finding 67,250 jobs to be a significant number).

## V.    Due Process

Plaintiff claims that the ALJ prevented her from adequately cross-examining an expert witness who testified at her hearing, which denied her due process of law. The Court has examined the record and is satisfied that Plaintiff was not prevented from asking any questions of the vocational expert or otherwise denied due process of law.[6]

## CONCLUSION

Having determined that the agency's decision is supported by substantial evidence and free from harmful legal error, that decision is AFFIRMED. Judgment shall be entered in Defendant's favor in accordance with Fed. R. Civ. P. 58.

Dated this _3rd_ day of _MAY_, 20_13_.

Bruce J. Jenkins
Senior United States District Judge

---

[6] Plaintiff's attorney was asking the vocational expert questions regarding Section I of the Mental RFC form from Dr. Truhn. The ALJ simply tried to explain to the attorney precisely what the Court has reaffirmed here: that Section I is not an RFC finding. And, after doing that, the ALJ allowed the attorney to ask those questions anyway.